UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 10-63180 |
| | ) | |
| MICHELE RAE CASERTA | ) | Chapter 7 |
| | ) | |
| SSN: XXX-XX-8502 | ) | Judge KENDIG |
| | ) | |
| | ) | ***SUPPORT DOCUMENTS* to** |
| Debtor | | MOTION OF PNC BANK NATIONAL |
| | | ASSOCIATION successor by merger to |
| | | NATIONAL CITY BANK successor by |
| | | merger to NATIONAL CITY MORTGAGE |
| | | CO FOR RELIEF FROM STAY AND |
| | ) | ABANDONMENT |
| | ) | |
| | ) | ADDRESS OF REAL PROPERTY: |
| | ) | 494 W. MARKET STREET |
| | ) | ALLIANCE, OHIO 44601 |

# NOTE

**Multistate**

| FHA Case No. |
| --- |
|  |

October 28, 2003
[Date]

494 W MARKET ST, ALLIANCE, Ohio 44601
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
NATIONAL CITY MORTGAGE CO

and its successors and assigns.
## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
SEVENTY SEVEN THOUSAND SEVEN HUNDRED SEVENTY NINE & 00/100

Dollars (U.S. $        77,779.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of SIX
percent (        6.000        %) per year until the full amount of principal has been paid.
## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.
## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
December 1        ,  2003        . Any principal and interest remaining on the first day of        November        ,
2033        , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at        National City Mortgage Co.,,  P O Box 17677,,
Baltimore, MD 21297-1677                                                or at such place as Lender may designate in writing
by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $        466.33        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other
items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

[ ] Graduated Payment Allonge   [ ] Growing Equity Allonge   [ ] Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day
of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to
those changes.

FHA Multistate Fixed Rate Note - 10/95

-1R (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2                    Initials: _DHL_
                                       mc

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4.00** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Michele Caserta_ _____ (Seal)
**MICHELE CASERTA**          -Borrower

_____ (Seal)
                             -Borrower

_Patricia R Caserta_ _____ (Seal)
**PATRICIA R CASERTA**         -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

252

9



Doc type: MORTGAGE
P: 1 of 8 · F: $xx.xx          10/29/2003
Rick Campbell              10:36xx/TBE
Stark County Recorder      T20030058715

RETURN TO:

NATIONAL CITY MORTGAGE CO
P.O. Box 8800
Dayton, OH 45401-8800

—————————————— [Space Above This Line For Recording Data] ——————————————

State of Ohio                    **OPEN-END MORTGAGE** | FHA Case No. |

THIS MORTGAGE ("Security Instrument") is given on **October 28, 2003**
The Mortgagor is

**MICHELE CASERTA** and **THOMAS CASERTA**

**PATRICIA R CASERTA , Husband and Wife**

$ Unmarried

whose current mailing address is **1110 GLENWOOD DR, ALLIANCE, Ohio. 44601**

("Borrower"). This Security Instrument is given to
**NATIONAL CITY MORTGAGE CO**

which is organized and existing under the laws of **THE STATE OF OHIO** , and
whose address is **116 Alleghany Center Mall, Pittsburgh, PA 15712**
("Lender"). Borrower owes Lender the principal sum of
**SEVENTY SEVEN THOUSAND SEVEN HUNDRED SEVENTY NINE & 00/100**
Dollars (U.S.$ 77,779.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 1,
2033** . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Ohio Open-End Mortgage - 4/96
-4R(OH) (9801)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8          Initials: MC
                     prc
                     J.C.

This instrument was filed by
UNION TITLE CO. ORDER NO. O2(xxx)14)



of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in STARK County, Ohio:

SEE LEGAL DESCRIPTION ATTACHED

which has the address of 494 W MARKET ST [Street]
ALLIANCE [City], Ohio 44601 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

4R(OH) (9801)          Page 2 of 8          Initials: MC.
                                                    Are
                                                    J.F.C.



If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

4R(OH) (9801)

Page 5 of 8

Initials: *MC*
*prc*
*JRC.*



Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

4R(OH) (9001)                    Page 4 of 8                    Initials: MC
                                                               pre
                                                               J.F.C.

10-63180-rk   Doc 12   FILED 08/19/10   ENTERED 08/19/10 09:56:41   Page 7 of 23



(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



-4R(OH) (0001)

Page 6 of 9

Initials: _MC_
_pic_
_J.F.C._



13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

-4R(OH) (9801)                    Page 6 of 8                    Initials: _mc_
                                                                 _psc_
                                                                 _J.J.C._

10-63180-rk   Doc 12   FILED 08/19/10   ENTERED 08/19/10 09:56:41   Page 9 of 23



18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Other [specify]
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider

-4R(OH) (0201)          Page 7 of 8          Initials: *mc*
*arc*
*J. J. C.*



BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Laura V. Diehl_ (signature)
Laura V. Diehl

_Michele Caserta_ (signature) _____(Seal)
MICHELE CASERTA                    -Borrower

_Meri L. Gallina_ (signature)
Meri L. Gallina

_Thomas Caserta_ (signature) _____(Seal)
THOMAS CASERTA                     -Borrower

_____(Seal)
                        -Borrower

_Patricia R. Caserta_ (signature) _____(Seal)
PATRICIA R CASERTA                 -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

_____(Seal)
                        -Borrower

**STATE OF OHIO,**                              Stark    County ss:

On this 28th day of October , 2003 , before me, a Notary Public in and for said County and State, personally appeared

Michele Caserta, Unmarried and Thomas and Patricia R. Caserta, Husband and Wife

, the individual(s) who executed the foregoing instrument and acknowledged that they did examine and read the same and did sign the foregoing instrument, and that the same is their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

(Seal)

_Meri L. Gallina_ (signature)
Notary Public

This instrument was prepared by:
NATIONAL CITY MORTGAGE CO

MERI L. GALLINA
Notary Public, State of Ohio
My Commission Expires SEPT. 12, 2007

-4R(OH) (0108)                    Page 8 of 8



Exhibit A

SITUATED IN THE CITY OF ALLIANCE, COUNTY OF STARK AND STATE OF OHIO AND KNOWN AS AND BEING LOT NUMBER 2890 AS THE SAME IS MARKED, NUMBERED AND DISTINGUISHED ON FILE AT THE RECORDER'S OFFICE IN CANTON, OHIO.

PARCEL NO. 01-10463

PROPERTY ADDRESS: 494 W. MARKET STREET - ALLIANCE, OHIO 44601

mc
pre
J.F.C.

# *200827502122*

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 10/01/2008 | 200827502122 | MERGED OUT OF EXISTENCE (MEX) | 125.00 | 300.00 | .00 | 105.00 | .00 |

**Receipt**

This is not a bill. Please do not remit payment.

CORPORATION SERVICE COMPANY
ATTN: LISA VAIDO
887 SOUTH HIGH STREET
COLUMBUS, OH 43206

---

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jennifer Brunner

#### 1500343

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**NATIONAL CITY MORTGAGE CO.**

and, that said business records show the filing and recording of:

Document(s):                                          Document No(s):

**MERGED OUT OF EXISTENCE**                            **200827502122**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the
Secretary of State at Columbus, Ohio
this 1st day of October, A.D. 2008.

Ohio Secretary of State



**Prescribed by:**

The Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.sos.state.oh.us
e-mail: busserv@sos.state.oh.us

Expedite this Form: (Select one)

Mail Form to one of the Following:

● Expedite      P.O. Box 1390
                Columbus OH 43216
*** Requires an additional fee of $100 ***

○ Non Expedite   P.O. Box 1329
                Columbus OH 43216

# CERTIFICATE OF MERGER
### Filing Fee $125.00
(154-MER)

In accordance with the requirements of Ohio law, the undersigned corporations, banks, savings banks, savings and loan, limited liability companies, limited partnerships and/or partnerships with limited liability, desiring to effect a merger set forth the following facts:

### I. SURVIVING ENTITY

A. The name of the entity surviving the merger is:  National City Bank

B. Name Change: As a result of this merger, the name of the surviving entity has been changed to the following

(Complete only if name of surviving entity is changing through the merger)

C. The surviving entity is a:  **(Please check the appropriate box and fill in the appropriate blanks)**

☐   Domestic (Ohio) For-Profit Corporation, charter number

☐   Domestic (Ohio) Nonprofit Corporation, charter number

☐   Foreign (Non-Ohio) For-Profit Corporation incorporated under the laws of the state/country of
     and licensed to transact business in the state of Ohio under license number

☒   Foreign (Non-Ohio) For-Profit Corporation incorporated under the laws of the state/country of   United States
     and **NOT** licensed to transact business in the state of Ohio

☐   Foreign (Non-Ohio) Nonprofit Corporation under the laws of the state/country of
     and licensed to transact business in the state of Ohio under license number

☐   Foreign (Non-Ohio) Nonprofit Corporation under the laws of the state/country of
     and **NOT** licensed to transact business in the state of Ohio

☐   Domestic (Ohio) For-Profit Limited Liability Company, with registration number

☐   Domestic (Ohio) Nonprofit Limited Liability Company, with registration number

☐   Foreign (Non-Ohio) For-Profit Limited Liability Company organized under the laws of the state/country of
     and registered to do business in the state of Ohio under registration number

☐   Foreign (Non-Ohio) For-Profit Limited Liability Company organized under the laws of the state/country of
     and **NOT** registered to do business in the state of Ohio

☐   Foreign (Non-Ohio) Nonprofit Limited Liability Company organized under the laws of the state/country of
     and registered to do business in the state of Ohio under registration number

☐   Foreign (Non-Ohio) Nonprofit Limited Liability Company organized under the laws of the
     state/country of                             and **NOT** registered to do business in the State of Ohio

☐   Domestic (Ohio) Limited Partnership, with registration number

☐ Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of _____ and registered to do business in the state of Ohio under registration number _____

☐ Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of _____ and NOT registered to do business in the state of Ohio

☐ Domestic (Ohio) Partnership Having Limited Liability, with the registration number _____

☐ Foreign (Non-Ohio) Partnership Having Limited Liability organized under the laws of the state/country of _____ and registered to do business in the state of Ohio under registration number _____

☐ Foreign (Non-Ohio) Partnership Having Limited Liability organized under the laws of the state/country of _____ and NOT registered to do business in the state of Ohio

☐ General Partnership NOT registered with the state of Ohio

## II  MERGING ENTITY

The name, charter/license/registration number, type of entity, state or country of incorporation or organization, respectively, of which is the entities merging out of existence are as follows  (If this is insufficient space to reflect all merging entities, please attach a separate sheet listing the merging entities).

| Name/Charter, License or Registration Number | State/Country of Organization | Type of Entity |
|---|---|---|
| National City Mortgage Co. (1500343) | Ohio | Corporation |
| | | |
| | | |
| | | |

## III  MERGER AGREEMENT ON FILE

The name and mailing address of the person or entity from whom/which eligible persons may obtain a copy of the agreement of merger upon written request:

| Catherine B. Wexler | 1900 East Ninth Street, Loc. 01-2174 | |
|---|---|---|
| Name | Street Address / P.O. Box Address | |
| Cleveland | OH | 44114 |
| City | State | Zip Code |

## IV  EFFECTIVE DATE OF MERGER

This merger is to be effective on ___October 1, 2008___ (if a date is specified, the date must be a date on or after the date of filing; the effective date of the merger cannot be earlier than the date of filing, if no date is specified, the date of filing will be the effective date of the merger).

## V  MERGER AUTHORIZED

Each constituent entity has complied with all of the laws under which it exists and the laws permit the merger  The agreement of merger is authorized on behalf of each constituent entity and that each person who signed the certificate on behalf of each entity is authorized to do so

## VI. STATUTORY AGENT

If the surviving entity is a foreign entity **NOT** licensed to transact business in this state, the name and address of statutory agent upon whom any process, notice or demand may be served is:

| Corporation Service Company | 50 West Broad Street, Suite 1800 |
|---|---|
| Name | Mailing Address |

| Columbus | Ohio | 43215 |
|---|---|---|
| City | | Zip Code |

☐ **If the agent is an individual and using a P.O. Box, check this box to certify the agent is a resident of the state of Ohio.**

## VII. STATEMENT OF MERGER

Upon filing, or upon such later date as specified herein, the merging entity/entities listed herein shall merge into the listed surviving entity.

## VIII. AMENDMENTS

In the case of a merger into a domestic corporation, limited liability company, or limited partnership, any amendments to the articles of incorporation, articles of organization, or certificate of limited partnership of the surviving domestic entity shall be filed with the certificate of merger.

☐ Amendments are attached          ☐ No Amendments

## IX. REQUIREMENTS OF CORPORATIONS MERGING OUT OF EXISTENCE

If a domestic or foreign corporation licensed to transact business in this state is a constituent entity and the surviving or new entity resulting from the merger is not a domestic or foreign corporation that is to be licensed to transact business in this state, the certificate of merger or consolidation shall be accompanied by the affidavits, receipts, certificates, or other evidence required by division (G) of section 1702.47 of the Revised Code, with respect to each domestic corporation, and by the affidavits, receipts, certificates, or other evidence required by division (C) or (D) of section 1703.17 of the Revised Code, with respect to each foreign constituent corporation licensed to transact business in this state.

## X. QUALIFICATION OR LICENSURE OF FOREIGN SURVIVING ENTITY

A. The listed surviving foreign entity desires to transact business in Ohio as a foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability, and hereby appoints the following as its statutory agent upon whom process, notice or demand against the entity may be served in the state of Ohio. The name and complete address of the statutory agent is:

| | |
|---|---|
| Name | Mailing Address |

| | Ohio | |
|---|---|---|
| City | | Zip Code |

☐ **If the agent is an individual and using a P.O. Box, check this box to certify the agent is a resident of the state of Ohio.**

The subject surviving foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability irrevocably consents to service of process on the statutory agent listed above as long as the authority of the agent continues, and to service of process upon the Secretary of State of Ohio if the agent cannot be found, if the corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability fails to designate another agent when required to do so, or if the foreign corporation's, bank's, savings bank's, savings and loan's, limited liability company's, limited partnership's or partnership having limited liability's license or registration to do business in Ohio expires or is canceled.

B. The qualifying entity also states as follows: (Complete only if applicable)

1. **Foreign Notice Under Section 1703.031**

   (If the qualifying entity is a foreign bank, savings bank, or savings and loan, then the following information must be completed.)

   (a) The name of the Foreign Nationally/Federally chartered bank, savings bank, or savings and loan association is:

   National City Bank

   (b) The name(s) of any Trade Name(s) under which the corporation will conduct business:

   _____

   _____

   _____

   (c) The location of the main office (non-Ohio) shall be

   _____
   Street Address / P.O. Box Address

   | | | | |
   |---|---|---|---|
   | City | County | State | Zip Code |

   (d) The principal office location in the state of Ohio shall be:

   1900 East Ninth Street
   Street Address / P.O. Box Address

   | Cleveland | Cuyahoga | **Ohio** | 44114 |
   |---|---|---|---|
   | City | County | State | Zip Code |

   **(If there will not be an office in the state of Ohio, please list none)**

   (e) The corporation will exercise the following purpose(s) in the state of Ohio:
   (Please provide a brief summary of the business to be conducted: a general clause is not sufficient.)

   _____

   _____

2. **Foreign Qualifying Limited Liability Company under section 1705.54**

   (If the qualifying entity is a foreign limited liability company, the following information must be completed.)

   (a) The name of the For-Profit or Nonprofit limited liability company in its state of organization/registration is:

   _____

   (b) The name under which the limited liability company desires to transact business in Ohio (if different from its home state name) is:

   _____

   (c) The limited liability company was organized or registered on _____
   under the laws of the state/country of _____

   (d) The address to which interested persons may direct requests for copies of the articles of organization, operating agreement, bylaws, or other charter documents of the company is:

   _____
   Street Address/ P.O. Box Address

   | | | |
   |---|---|---|
   | City | State | Zip Code |

3. **Foreign Qualifying Limited Partnership under section 1782.49**
   (If the qualifying entity is a foreign limited partnership, the following information must be completed.)

   (a) The name of the limited partnership is

   _____

   (b) The limited partnership was formed on           _____

   Under the laws of the state/country of           _____

   (c) The address of the office of the limited partnership in its state/country of organization is:

   _____
   Street Address / P.O. Box Address

   _____ | _____ | _____ | _____
   City                      | County            | State         | Zip Code

   (d) The limited partnership's principal office address is:

   _____
   Street Address / P.O. Box Address

   _____ | _____ | _____ | _____
   City                      | County            | State         | Zip Code

   (e) The names and business or residence addresses of the general partners of the partnership are as follows

   _____ | _____
   Name                               | Street Address / P.O. Box Address

   _____ | _____

   _____ | _____

   _____ | _____

(If insufficient space to cover this item, please attach a separate sheet listing the general partners and their respective addresses)

   (f) The address of the office where a list of the names and business or residence addresses of the limited partners and their respective capital contributions is to be maintained is:

   _____
   Street Address / P.O. Box Address

   _____ | _____ | _____ | _____
   City                      | County            | State         | Zip Code

   The limited partnership hereby certifies that it shall maintain said records until the registration of the limited partnership in Ohio is canceled or withdrawn

4. **Foreign Qualifying Partnership Having Limited Liability Under Section 1775.64**
(If the qualifying entity is a foreign partnership having limited liability, the following information must be completed.)

   (a) The name of the partnership shall be:

   _____

   (b) The partnership was formed under the laws of the state/country of _____

   (c) Please complete the following appropriate section (either item c(1) or c(2) ):

      ( 1 ) The address of the partnership's principal office in Ohio is

   _____
   Street Address / P.O. Box Address

   _____ , Ohio _____
   City                                       Zip Code

   *(If the partnership does not have a principal office in Ohio, then item c(2) must be completed)*

      (2 ) The address of the partnership's principal office (Non-Ohio):

   _____
   Street Address / P.O. Box Address

   _____
   City                              State                     Zip Code

   (d) The business which the partnership engages in is:

   _____

   _____

**(Proceed to page 7 for signatures of authorized officers, partners and representatives.)**

The undersigned constituent entities have caused this certificate of merger to be signed by its duly authorized officers, partners and representatives on the date(s) stated below

National City Bank
Exact name of entity
By: _____
Its: President
Date: 9/29/2008

National City Mortgage Co
Exact name of entity
By: _____
Its: President
Date: 9/29/2008

Exact name of entity
By: _____
Its: _____
Date: _____

Exact name of entity
By: _____
Its: _____
Date: _____

Exact name of entity
By: _____
Its: _____
Date: _____

Exact name of entity
By: _____
Its: _____
Date: _____

Exact Name of entity
By: _____
Its: _____
Date: _____

Exact Name of entity
By: _____
Its: _____
Date: _____

Exact Name of entity
By: _____
Its: _____
Date: _____

Exact Name of entity
By: _____
Its: _____
Date: _____

An authorized representative of each constituent corporation, partnership, or entity must sign the merger certificate ORC 1701.81(A), 1702.43 (A), 1705.38(A), 1775.47(A), 1782.433(A)

*Complete the information in this section if box (1), (2) or (3) is checked.*

**AFFIDAVIT**

In lieu of dissolution releases from various governmental authorities (1701.86(H)(6) ORC)

National City Mortgage Co.

*(Exact Name of Corporation)*

The undersigned, being first duly sworn, declares that on the dates indicated below, each of the named state governmental agencies was advised IN WRITING of the scheduled date of filing of the Certificate of Dissolution and was advised IN WRITING of the acknowledgement by the corporation of the applicability of the provisions of Section 1701.95 of the ORC.

| AGENCY | DATE NOTIFIED |
|---|---|
| Ohio Department of Taxation<br>Dissolution Section<br>Box 182382<br>Columbus, Ohio 43218-2382 | 10/1/2008 |
| Ohio Job & Family Services<br>Status and Liability Section<br>Data Correspondence Control<br>**Overnight**: 4020 East 5th Avenue<br>        Columbus, OH 43219-1811<br>**Regular**: P.O. Box 182413<br>        Columbus, OH 43218-2413<br>**Fax**: 614-752-4811<br>**Phone**: 614-466-2319 | 10/1/2008 |

The treasurer of any County named below

_____    _____

_____    _____

_____    _____

Ohio Bureau of Workers' Compensation
30 W. Spring Street
Columbus, Ohio 43215          _____

( Note: This affidavit must be signed by one or more persons executing the certificate of dissolution or by an officer of the corporation.)

By: _____          Title: President

Name: Joseph Cartellone

_____1900 East Ninth Street

*(Street)*          *NOTE: P.O. Box Addresses are NOT acceptable.*

Cleveland                    OH               44114
*(City)*          *(State)*          *(Zip Code)*

Sworn before me and subscribed in my presence on     October 1, 2008
                                                         *(Date)*

_____

SUSAN J. CRAMER
Notary Public, State of Ohio, Cuy. Cty
My commission expires Jan. 31, 2010

Commission Expires     1/31/2010
                         *(Date)*

(Notary Seal)

Complete the information in this section if box (1), (2) or (3) is checked.

STATE OF OHIO

County of  Cuyahoga          SS

Joseph Cartellone
_____ , being first duly sworn, deposes and says that she/he is

President                                  of        National City Mortgage Co.
_____
          (Title)
that this affidavit is made in compliance with section        1701.95        of the ORC:
                                                             (Section #)
That said corporation has (Check one of the following)

☐  A.  has no personal property in any county in the State of Ohio;

☐  B.  personal property only in the following county(ies)

_____          _____        _____

and that the net assets of said corporation are sufficient to pay all personal property taxes accrued to date.


Signature: _____

Name: _____Joseph Cartellone_____


Sworn before me and subscribed in my presence on        October 1, 2008
                                                         (Date)


_____
                                        (Notary Public)

SUSAN J. CRAMER
Notary Public, State of Ohio, Cuy. Cty
My commission expires Jan. 31, 2010

          (Notary Seal)              Commission Expires   1/31/2010
                                                          (Date)



Comptroller of the Currency
Administrator of National Banks

| Northeastern District Office | Licensing Division |
|---|---|
| 340 Madison Avenue, 5th Floor | Telephone: (212)790-4055 |
| New York, New York 10173-0002 | Fax: (301) 333-7015 |

November 6, 2009

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza. 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re: Application to merge National City Bank, Cleveland, Ohio, with and into PNC Bank,
National Association, Wilmington, Delaware under the charter and title of the latter
Control No: 2009 NE 02 0017         Charter No: 1316

Dear Mr. Keller:

This letter is the official certification of the Comptroller of the Currency to merge National City
Bank, Cleveland, Ohio ("NCB"), with and into PNC Bank, National Association, Wilmington,
Delaware ("PNC Bank"), effective as of close of business on November 6, 2009. The resulting
bank's title is PNC Bank, National Association, charter number 1316.

This is also the official authorization given to PNC Bank, the resulting bank, to operate branches
of NCB as branches of the resulting bank. Branches of a national bank target are automatically
carried over to the resulting bank and retain their current OCC branch numbers.

We understand that upon consummation, the capital surplus of PNC Bank will increase. Within
30 days following consummation, please provide this office with the exact dollar amount of the
capital change so that we may issue our letter certificating the capital increase.

If the combination does not occur as represented in your letter of October 26, 2009, this
certification must be returned to the OCC. Following consummation of the merger, please return
the charter certificate for NCB so that we may properly close our files for this bank.

Sincerely,

Sandya Reddy
Acting Director for District Licensing